650 P.2d 12

**EL PASO ELECTRIC, et al., Plaintiffs-Appellees,**

v.

**REAL ESTATE MART, INC., et al., Defendants,**

and

**Dennis Johnson and Shirley Johnson, Defendants-Appellants.**

Nos. 5448, 5425.

Court of Appeals of New Mexico.

June 8, 1982.

Rehearing Denied July 1, 1982.

Certiorari Denied Aug. 19, 1982.

Frederick H. Sherman, Deming, for defendants-appellants.

Stephen A. Hubert, Beverly J. Singleman, Martin, Lutz, Cresswell & Hubert, P. A., Las Cruces, for plaintiffs-appellees.

## OPINION

SUTIN, Judge.

Dennis Johnson and Shirley E. Johnson, his wife (The Johnsons) appeal a judgment rendered in an eminent domain proceeding tried before the court in which the condemnors were El Paso Electric Company, Public Service Company of New Mexico and Community Public Service Company (The Utilities). We affirm.

The Johnsons raise three points: (1) error in the denial of jury trial and severance from other defendants; (2) error in six miscellaneous matters; and (3) refusal to consider The Johnsons' counterclaim for damages.

A long chronological statement of the record is essential to resolve the issues raised. It shows:

(1) On November 7, 1977, The Utilities filed a petition against a large number of defendants including The Johnsons to obtain easements and rights of way for the purpose of constructing two 345 KV transmission lines.

(2) On January 24, 1978, The Utilities filed a first amended petition.

(3) On May 26, 1978, defendant Real Estate Mart filed the first demand for trial by jury.

(4) On June 26, 1978, four other defendants filed demand for trial by jury.

(5) On October 30, 1978, The Johnsons' attorney filed a demand for trial by jury

for defendants other than The Johnsons and two answers for other defendants which demanded trial by jury.

(6) On June 1, 1979, The Utilities filed a second amended petition.

(7) On March 26, 1980, The Johnsons filed an answer and counterclaim *but made no demand for trial by jury.*

(8) On July 23, 1980, Real Estate Mart and other defendants filed a demand for trial by jury.

(9) On March 4, 1981, notice was given that pending motions would be heard March 16, 1981.

(10) On March 16, 1981, long after the petitions were filed, The Johnsons filed a motion to vacate their non-jury trial and allow them trial by jury. The trial court orally ruled that The Johnsons would be put to a non-jury trial March 18, 1981. Argument for an interlocutory appeal was made and denied and The Johnsons proceeded to trial before the court.

(11) *On April 27, 1981, judgment for The Johnsons was entered.*

(12) On May 26, 1981, The Johnsons filed requested findings of fact and conclusions of law, and a motion to vacate the judgment and allow the entry of findings and conclusions. No action was taken on this motion until *July 2, 1981.*

(13) *On May 27, 1981, The Johnsons filed notice of appeal from the judgment of April 27, 1981* "and the Court's severance of the defendants without guaranteeing them the right to jury trial."

(14) On June 30, 1981, the court's findings and conclusions were entered *nunc pro tunc* as of April 27, 1981. The judgment was not vacated.

(15) *On July 2, 1981,* by stipulation of counsel, a supplemental order was entered: (1) that The Johnsons recover interest on the judgment from the date of taking, being November 7, 1981, and (2) *that the court's findings and conclusions be nunc pro tunc as of the date of the judgment rendered on April 27, 1981.*

(16) *On July 7, 1981, The Johnsons filed a motion for a new trial.*

(17) On August 20, 1981, the motion for a new trial was denied for lack of jurisdiction.

(18) On September 3, 1981, the court ordered The Johnsons to pay The Utilities' costs.

(19) On September 11, 1981, The Johnsons filed notice of appeal from (1) the supplemental order entered July 2, 1981; (2) the order entered August 20, 1981, denying The Johnsons a new trial; and (3) the order of September 23, 1981, that The Johnsons pay the costs.

From this chronology, we will summarily dispose of some issues raised by The Johnsons.

*Wagner Land and Investment Co. v. Halderman,* 83 N.M. 628, 630, 495 P.2d 1075 (1972) said:

This court has held that the trial court loses jurisdiction of the case upon the filing of the notice of appeal, except for the purposes of perfecting such appeal, or of passing upon a motion directed to the judgment pending at the time. [Citations omitted.]

(1) The Johnsons' motion for new trial was directed to the judgment. Rule 59(b) of the Rules of Civil Procedure reads:

A motion for a new trial shall be served not later than ten days after the entry of the judgment.

 This is a mandatory provision. The Johnsons filed a motion for a new trial on July 7, 1981, two and one-half months after entry of judgment on April 27, 1981, and a month and a half after notice of appeal was filed. It was filed too late. It cannot be granted by the trial court and presents nothing for review by this Court. *Weir v. United States,* 339 F.2d 82 (8th Cir. 1964); 6A Moore's Federal Practice (Second Edition) ¶ 59.05[1] (1982). Finally, the denial of a motion for a new trial is ordinarily not an appealable order. *Public Serv. Co. v. First Judicial Dist. Court,* 65 N.M. 185, 334 P.2d 713 (1959).

(2) There are no findings of fact or conclusions of law before us and the evidence is not subject to review.

On May 26, 1981, a month after judgment was entered, The Johnsons filed requested findings and conclusions. *Halderman, supra,* said:

> We hold that plaintiffs' failure to timely request findings of fact and conclusions of law constitutes a waiver of same, and that they cannot obtain a review of the evidence on appeal. [Citation omitted.] [Id. 83 N.M. 630, 495 P.2d 1075.]

■ On July 2, 1981, the court ordered that the court's findings and conclusions be *nunc pro tunc* as of April 27, 1981, the date of the judgment. The trial court lacked jurisdiction to enter this order after notice of appeal had been filed. *Davis v. Westland Development Company,* 81 N.M. 296, 466 P.2d 862 (1970).

(3) For the same reason, the supplemental order entered July 2, 1981, was void as the court was without jurisdiction to enter the order. *National American Life Insurance Co. v. Baxter,* 73 N.M. 94, 385 P.2d 956 (1963).

The Johnsons filed a motion to vacate the judgment on May 26, 1981. The trial court failed to rule upon the motion within thirty days after the filing thereof. Such failure to rule is a denial thereof. Section 39–1–1, N.M.S.A.1978.

■ (4) This section is not applicable to the order entered on September 3, 1981, that The Johnsons pay the costs. *Prudential Insurance Company of America v. Anaya,* 78 N.M. 101, 428 P.2d 640 (1967). Error as to costs was abandoned in this appeal.

(5) The Johnsons' second notice of appeal from the supplemental order of July 2, 1981, and from the order denying The Johnsons trial by jury of July 7, 1981, which notice of appeal was filed September 11, 1981, is without force and effect.

The remaining issues are: (1) denial of jury trial to The Johnsons; (2) refusing to grant a continuance; and (3) refusing to consider The Johnsons' counterclaim for damages.

A. *The Johnsons were not entitled to trial by jury.*

The right to trial by jury appears in (1) Art. II, § 12 of the New Mexico Constitution; (2) Rule 38 of the Rules of Civil Procedure; and (3) § 42–1–8, N.M.S.A.1978 of the general Eminent Domain Act. Section 42A–1–21, N.M.S.A.1978 of the "Eminent Domain Code" enacted in 1981 is not applicable. Its effective date was July 1, 1981, over three months after trial was had before the court.

The constitutional provision reads in pertinent part:

> The right of trial by jury as it has heretofore existed shall be secured to all and remain inviolate.

■ It was the purpose of the Constitution framers to retain the right to trial by jury as it heretofore existed in the Territory of New Mexico except in special proceedings unless express provision for jury trial was included therein. *Seward v. Denver & R. G.,* 17 N.M. 557, 131 P. 980, 46 LRA (N.S.) 242 (1913). In *Seward,* the railroad was not entitled to trial by jury in an action before the corporation commission. See also, *State ex rel. Bliss v. Greenwood,* 63 N.M. 156, 315 P.2d 223 (1957).

■ Eminent domain proceedings are "special proceedings." *State ex rel. State Highway Commission v. Burks,* 79 N.M. 373, 443 P.2d 866 (1968). In territorial days, two eminent domain acts were enacted: (1) Laws 1905, ch. 97, now § 42–1–1 et seq., N.M.S.A.1978 and (2) Laws 1909, ch. 141, now § 62–1–1 et seq., N.M.S.A.1978.

■ The 1909 Act relates to corporations such as utilities who generate, produce, transmit, etc., electricity and applies to the instant case. *El Paso Elec. Co. v. Real Estate Mart,* 92 N.M. 581, 592 P.2d 181 (1979).

Section 42–1–8, originally enacted in the 1905 Act, which provides for an appeal from the commissioners to the district court, reads in pertinent part:

[A]nd it shall stand for trial in said court *as other civil causes are tried* and shall be tried de novo, and the parties, *unless they shall waive the same*, shall be entitled to a trial by jury *as in ordinary cases.* [Emphasis added.]

Section 62–1–4 originally enacted in the 1909 Act provides that, if an agreement cannot be reached between the condemnors and the owners, the condemnors

may proceed to obtain the same in the manner provided by law for condemnation of such lands * * *.

" 'Provided by law' means 'provided by statute law.' " *Trujillo v. Tanuz,* 85 N.M. 35, 40, 508 P.2d 1332 (Ct.App.1973).

■ The only condemnation "statute law" in existence in 1909 was the 1905 Act. It follows that the 1909 Act adopted the manner of condemnation of land provided for in the 1905 Act. This is evidenced by the fact that condemnations by a gas company and an electric company were determined in the manner provided by the 1905 Act without reference to the 1909 Act. *Transwestern Pipe Line Company v. Yandell,* 69 N.M. 448, 367 P.2d 938 (1961); *El Paso Electric Co. v. Milkman,* 66 N.M. 335, 347 P.2d 1002 (1959). As a result, the trial by jury provision in the 1905 Act is now controlling.

What is meant by the language in § 42–1–8 which reads:

[T]he parties, unless they shall waive the same, shall be entitled to a trial by jury as in ordinary cases.

■ Use of the words "parties" and "they" indicate that all parties are entitled to jury trial unless all parties shall waive the same. Of course, if there is one party plaintiff and defendant, either party to a condemnation proceeding can secure a jury trial de novo. *State ex rel. State Highway Commission v. Marquez,* 67 N.M. 353, 355 P.2d 287 (1960). But what is the rule where there were three plaintiffs and thirty-six defendants when the petition was filed? Are all of the thirty-nine parties entitled to a jury trial unless all of them waive it? This view is illogical and unreasonable.

Common sense dictates that each claim by condemnors against each condemnee is a separate claim for relief. It was so held in *State ex rel. Lebeck v. Chavez,* 45 N.M. 161, 113 P.2d 179 (1941), in which a suit to foreclose a large number of separate paving liens was filed. The complaint contained several paragraphs, each paragraph of which contained different lots of real estate and different defendants. In an eminent domain proceeding, it was stated that the property interests of one condemnee was a claim separate from another. *United States v. 1,071.08 Acres of Land, Etc.,* 564 F.2d 1350 (9th Cir. 1977). It is specifically so provided in § 42–2–11, N.M.S.A.1978 under a special alternative condemnation procedure.

■ As applied to the instant case, each of the parties shall be secure in a right to trial by jury. This right is not reserved to any party who waives that right. Where trial by jury has not been waived by any party, all separate claims of each party will be tried before the jury unless severance is ordered. Each party who shall have waived trial by jury shall be tried by the court separately or together unless severance is ordered.

■ The phrases in the rule "as other civil cases" and "as in ordinary cases" have a definite meaning. The word "as" means "in a manner and like that of." *Anderson v. Northern & Dakota Trust Co.,* 67 N.D. 458, 274 N.W. 127 (1937). "Ordinary" as an adjective means "usual" or "common." 67 C.J.S. Ordinary, pp. 897–898 (1978). In other words, § 42–1–8, *supra,* means that the right to trial by jury and the waiver thereof in eminent domain proceedings shall be determined in the manner provided for in ordinary civil cases, cases governed by the Rules of Civil Procedure. Rule 1 says:

These rules govern the procedure in the district courts * * * except to the extent that * * * existing rules applicable to special statutory or summary proceedings are inconsistent herewith.

This rule expressly declares that the Rules of Civil Procedure are inapplicable to inconsistent special proceedings. *State ex rel. State Highway Commission v. Burks, supra.* A definite consistent provision appears in § 42–2–11. It reads:

Any party desiring to try the cause before a jury, shall make demand and deposit jury fees pursuant to Rule 38, Rules of Civil Procedure, and any other applicable rules of civil procedure.

 By this provision, the Legislature has made definite that which the 1905 Act left in an indefinite state. We hold that § 42–1–8 which provides for entitlement to trial by jury unless waived means pursuant to Rule 38, Rules of Civil Procedure.

Rule 38(a) provides for trial by jury by demand served upon other parties after commencement of the action. There was no compliance by The Johnsons. They rely on subsection (d) which reads:

The failure of a party to serve a demand * * * or to make the jury fee deposit as required, constitutes a waiver by him of trial by jury. *A demand for trial by jury made as above provided may not be withdrawn without the consent of the parties.* [Emphasis added.]

Under this emphasized sentence, The Johnsons claim that the demand made by the other defendants would act as a demand for them. 2B Barron and Holtzoff, Federal Practice and Procedure, § 877, at 49 (Wright Ed. 1961) concludes:

Where a timely and proper demand for a jury is made by one party, all of the parties to the action *who are interested in the issues as to which jury trial has been demanded* may rely thereon and need not make an additional demand of their own. [Emphasis added.]

5 Moore's Federal Practice ¶ 38.45 (Second Edition 1982) states:

In other words if a timely and proper demand for jury is made all other parties in the action who are affected by the demand may rely thereon and need not

make a jury demand *for issues embraced therein.* [Emphasis added.]

*Note 2 states*:

Since the basis of this provision against withdrawal is that other parties should be able to rely thereon, if the demand does not pertain to certain issues then one of the parties concerned with those issues should make demand therefor.

An excellent comprehensive discussion of the rule on reliance overlooked by the parties is set forth in *Rosen v. Dick,* 639 F.2d 82, 91 et seq. (2nd Cir. 1980). The court first noted that Rule 38(d) which says that a jury demand "may not be withdrawn without the consent of the parties" does ensure that one party may rely on another's jury demand; that the courts will not require the formal making of a superfluous second demand, nor will they penalize a party who has reasonably relied on an existing demand. However, the court further said:

If the first demand does not cover issues pertinent to a second party, the second party cannot rely *reasonably* on the first demand, and the second demand would be far from superfluous since, without it, the right to a jury trial will have been waived as to those additional issues. [Emphasis added by Court.] [Id. 92.]

In *Rosen,* third party claims raised new issues not covered by a jury demand. Absent a demand for trial by jury as to those issues, the right to jury trial was waived.

 As applied to the instant case, jury demands made by defendants, other than The Johnsons, were for issues between them and The Utilities under separate claims. The Johnsons cannot rely on those demands. The property interests of The Johnsons were a claim separate from the lands owned by other defendants. *United States, supra.* The claim against The Johnsons involved issues with reference to different lands and damages. The Johnsons were concerned with reference to those issues and were required to file a demand for jury on those issues.

The Johnsons also claim that the trial court set their trial separately without motion or order and disallowed them the right

to demand jury trial as allowed by Rule 42(b). It reads:

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial * * * always preserving the right of trial by jury given to any party as a constitutional right.

■ The Johnsons are mistaken. They were granted a separate trial, not because of conditions set out in the rule, but because no demand was made for trial by jury. Section 42(b) applies where all parties are subject to trial by jury and one or more of the parties demand a separate trial by jury.

"Rule 42(b) expressly provides that when separate trials are ordered the right to trial by jury is preserved. * * * If jury and non jury issues are separated for trial, this provision must be taken into consideration in determining the order of their trial." 5 Moore's Federal Practice ¶ 42.03[1], pp. 42–47, Note 11 (Second Edition 1982). In *United States, supra,* when both defendants were entitled to trial by jury, under Rule 42(b), the trial court had broad discretion to order separate jury trials. The exercise of that discretion would be set aside only if clearly abused. See *Mendenhall v. Vandeventer,* 61 N.M. 277, 299 P.2d 457 (1956); *McCrary v. Bill McCarty Const. Co., Inc.,* 92 N.M. 552, 591 P.2d 683 (Ct.App.1979).

■ On March 16, 1981, some three and a half years after the petition for condemnation had been filed, The Johnsons filed a motion to allow a jury trial. At the time The Johnsons' answer was filed, they knew that demand for jury trial had to be timely filed. It was not filed intentionally as a matter of trial strategy. It resulted in a change of position. In the beginning The Johnsons did not want a trial by jury. Some three years later they did. The denial of the motion did not constitute an abuse of discretion. *Myers v. Kapnison,* 93 N.M. 215, 598 P.2d 1175 (Ct.App.1979).

Rule 39(a) provides:

> All issues not set for trial to a jury as provided in Rule 38, shall be tried by the court; but notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.

■ The Johnsons argue that the word "shall" in "shall waive the same" in § 42–1–8, expands the right to trial by jury; that it "would require an intentional waiver of a jury trial as in criminal cases rather than electing not to demand a jury trial as denominated by " 'May' in Rule 39." We disagree. But if this were the rule, the record shows an intentional waiver of trial by jury.

The Johnsons were not entitled to trial by jury.

### B. *Denial of continuance was not abuse of discretion.*

■ The Johnsons claim the trial court abused its discretion in not allowing a continuance of the case set for trial on March 18, 1981. Such actions will be reviewed only when palpable abuse of discretion is demonstrated. *Read v. Western Farm Bur. Mut. Ins. Co.,* 90 N.M. 369, 563 P.2d 1162 (Ct.App.1977).

■ On February 16, 1981, notice of setting was received. On February 21, 1981, on receipt of a submitted pre-trial order, The Johnsons knew that they did not have trial by jury. When questioned by the court at the March 16th hearing on the reason for a continuance, the response was "Because we haven't been allowed to do any discovery." A review of the record shows that the trial court did not abuse its discretion in this respect. *New Mexico Feeding Co., Inc. v. Keck,* 95 N.M. 615, 624 P.2d 1012 (1981); *Crockett v. Encino Gardens Care Center, Inc.,* 83 N.M. 410, 492 P.2d 1273 (Ct.App.1971).

■ "The trial court is never bound to accept either the mere statement of counsel requesting the continuance or that of an affidavit supporting the application." *Fidelity & Deposit Co. v. Jones,* 256 Ky. 181, 75 S.W.2d 1057, 1059 (1934). Continuances are not favored. *Cavalier Insurance Corpo-*

*ration v. Gann,* 57 Ala.App. 519, 329 So.2d 573 (1976); *Bost v. Citizens National Bank,* 1 N.C.App. 470, 162 S.E.2d 158 (1968). "While courts are indulgent in granting continuances to litigants to allow them a reasonable time to prepare for a trial on the merits, they must also guard against imposition and unreasonable delay." *Bollinger v. National Fire Ins. Co. of Hartford, Conn.,* 25 Cal.2d 399, 154 P.2d 399, 403 (1944). Lack of due diligence in proceeding with the cause is a decisive factor in determining the propriety of the trial court's exercise of its discretion. *Bullistron v. Augustana Hospital,* 52 Ill.App.3d 66, 9 Ill.Dec. 654, 367 N.E.2d 88 (1977).

A year before trial, The Johnsons filed their answer, but made no demand for trial by jury. Sufficient time was available to prepare for trial. Discovery should not be delayed until trial is near and confusion arises. Trial calendars are jammed. District judges are harassed with motions, settlements, hearings and procedural matters during the calendar period. Their primary duty is to attend the orderly procedures of trials, not to resolve confusion that immediately precedes the trials caused by litigants and lawyers. To be liberal in granting continuances may prejudice opposing parties ready for trial. When objection to continuance is made as it was in this case, it becomes a factor to be considered by the court in the exercise of its discretion.

Denial of the continuance was not a ruling beyond the bounds of reason.

C. *No error was committed as to plaintiffs' counterclaim.*

In the original petition, The Utilities sought to condemn a 300-foot easement and right of way. An interlocutory appeal was taken to the Supreme Court by defendants other than The Johnsons. In the interim period, The Utilities filed a first amended petition in which it sought a 200-foot easement and right of way. The Supreme Court held that the 100-foot wide easement limitation contained in § 62–1–4, N.M.S.A. 1978 was controlling and prohibited the condemnation of two additional 100-foot ease-

ments parallel and adjacent to each other. *El Paso Elec. Co., supra.*

On June 1, 1979, The Utilities filed a second amended petition in which it sought a 100-foot easement and right of way. On March 26, 1980, some 10 months later, the Johnsons first appeared in this litigation by way of answer and counterclaim. Prior thereto, the record does not show any participation by them in the litigation that began on November 7, 1977. If we correctly understand The Johnsons' counterclaim, it sought damages for conduct of The Utilities prior to the filing of the second amended complaint. It claimed a violation of civil rights contrary to the provisions of 42 U.S.C. § 1981, et seq. which was abandoned in this appeal. It also claimed a failure to negotiate in good faith, trespass upon the land, abuse of process, possession and wrongful use of The Johnsons' land from the date of occupation to the date of filing the second amended petition.

In this appeal, The Johnsons rely upon their requested findings of fact and the early interlocutory appeal, none of which are before this Court. The Johnsons state:

As such, the counterclaim in the action deals with those areas involving actions outside the authority to condemn. These actions have not been authorized by the statutes to condemn the property and to now hold the condemnation is exclusive deprives the defendants of (1) compensation for use of 200′ taken beyond that authorized, (2) deprive them of the right to damages for bulldozing and use of the road outside their easement and (3) deprive the defendants of due process as to the damages and redress of the high handed, abusive and fraudulent conduct of the plaintiffs.

During the course of the trial, the court ruled out punitive damages, civil rights violation, due process, failure to negotiate in good faith, and trespass, except that compensatory damage would be allowed that may have resulted from The Utilities going on the property to take the 300-foot right of way.

Extensive argument followed. An offer of proof was made. Johnson testified that The Utilities took possession of the 300- and 200-foot portions of the property and graded roads outside the 100-foot easement. But he said this grading did not cause The Johnsons any problems regarding the use of the property.

 The trial court held that The Johnsons were not entitled to damages by reason of their claims regarding trespass and punitive damages. We agree.

*Board of County Com'rs, Lincoln County v. Harris*, 69 N.M. 315, 317–318, 366 P.2d 710 (1961) says:

Our constitution (Art. II, § 20) reads, "Private property shall not be taken or damaged for public use without just compensation." From this language it is clear that in order for an owner to be entitled to compensation a taking is not required—it being sufficient if there are consequential damages.

\* \* \* \* \* \*

In New Mexico the correct rule for measuring damages in eminent domain cases is the so-called "before and after rule" whereby the owner of property is entitled to recover as compensation the amount the fair market value of his property is depreciated by the taking. [Citations omitted.] We are clear that the same rule is applicable where damage to property results from a change in grade [lowering grade of street].

See §§ 42–1–12 and 42–1–10, N.M.S.A. 1978; *Zobel v. Public Service Company*, 75 N.M. 22, 399 P.2d 922 (1965).

In other words, The Johnsons were entitled to consequential damages if they could prove that the value of their property depreciated by reason of entry of The Utilities and grading roads on The Johnsons' property. No damages were proven. In fact, Dennis Johnson testified that no problems arose.

"A public utility, like anyone else, is responsible for damages resulting from its wrongful conduct." *Garver v. Public Service Company of New Mexico*, 77 N.M. 262,

421 P.2d 788 (1966). " 'Wrongful' is defined as injurious, heedless, unjust, reckless, unfair." *Buhler v. Marrujo*, 86 N.M. 399, 524 P.2d 1015 (Ct.App.1974). Nothing appears of record to sustain wrongful conduct of The Utilities in its entries on The Johnsons' property.

We find no error with reference to The Johnsons' counterclaim.

Affirmed. The Johnsons shall pay the cost of this appeal.

IT IS SO ORDERED.

WALTERS, C. J., and NEAL, J., concur.